Now we will hear argument in number 222243, case of the same name, Eregli, etc. v. ITC. Thank you, Your Honor. Turning to the reconsideration case, there are essentially two issues before the court. We will certainly talk about the challenge to the original determination and the impact of that. But first, it's important to note that the CIT below essentially held that the decision not to initiate is not reviewable under 28 U.S.C. 1581I. And I want to point out that that conflicts with two important precedents, including from this that state categorically that a reconsideration decision is reviewable under 1581I. And that's important and I think disposes of the reconsideration case as a threshold matter. The first is Home Products International, which is a 633 F.3. 1369, Federal Circuit, 2011. And in that case, this court said, and I quote, it's well established that when an administrative agency denies a party's petition to seek to reopen on the basis of new evidence or change circumstances, that decision is reviewable on appeal and abuse of discretion is the standard. The second case that goes into even more detail on particular issues to this case is from the CIT, and that's Consolidated Fibers. There's a couple of Consolidated Fibers that are cited in all of these briefs. So to be clear, the one I'm referring to is 465 F.2. 1338 from the CIT in 2006. And that is particularly important here because in that case, the court looked at the differences under 1581I and C for challenges and where the line would be drawn. And in that case, the court literally says that a decision to deny reconsideration cannot be reviewed under 1581C, and it can only be reviewed under 1581I. So I think that's dispositive of the first issue, and it's a key problem with the decision below. I think that takes us to what the court hung its hat on, which was essentially that 1581C is the right hook because Erdemeyer had to challenge the original determination. Now, this is a point we started to discuss, but I would like to go through very particularly. I'm not going to get on a roll here. So before you do that, I want to ask you about this next point. What would you consider to be the true nature of the action? On the reconsideration appeal and on the CCR, to be clear, the challenge is the failed agency action to review reconsideration. The challenge on CCR is the failed agency action to carry out a full and complete change circumstance review. On the reconsideration case, of course, there are implications that go back to 2016. We know that because without the other Turkish producers' imports, we know for sure that imports would go below the statutory standard, and that's a fundamental point. So I don't... Are we seeking retroactive termination of the anti-dumping duty investigation and revocation of the order? In the reconsideration case, yes, and that has been done before. Those are the Fair Silicon cases. It's the core example that we know where the court has gone back and the ITC has reviewed its past determinations under reconsideration. And in this respect, it's different from the change circumstances review. At page nine of your reply brief in that case, you say Erdemir Mayer is not seeking retroactive changes to the original determination. Yes, that's correct. And reconsideration, actually, in the original Fair Silicon cases where this has happened, in those cases, without much explanation, because reconsideration is admittedly a bit murky at the commission, but without much discussion, the commission said rather than do a change circumstance review, which had been requested in those cases, it reverted to a reconsideration. And the reconsideration was to address change circumstances that had happened since the original injury determination there. And what the commission sought to do was go back and undo its decision from the very beginning. This is why reconsideration is quite important. There's also trouble on the reconsideration... Just remind me, Home Products was a case in which there was reconsideration and we reviewed it, or there was a refusal to reconsider? There was refusal to reconsider and the court said it had to be done. Home Products differed a bit on the facts. I think Consolidated Fibers from the CIT is more directly on point. But Consolidated Fibers is not our precedent. Which is why I started... Right. So what were the circumstances in Home Products? I think I just looked, the referees don't even discuss the case, which is... The Home Products, the difference in Home Products is that there was litigation pending, and the party, the Court of International Trade wanted a remand to reconsider facts that had changed after the circumstances of the initial decisions. And the government agency said, no, we are precluded from seeking reconsideration in this circumstances based on new facts. We're going to be looking go forward only. And this court came back and said, this is reviewable on appeal and abuse of discretion is the standard. So this was not reconsideration by the CIT, it was reconsideration by the commission? Is that right? It was reconsideration as part of the CIT's order to the commission. Okay. Can we come back to the true nature of the action here? If I understand correctly, you're trying to persuade us that the true nature of your action is, hey, we want review of the denial of reconsideration. But if that's the extent of what you get, it's less... I don't see how that helps you. The true nature of the action, at least I think is the argument from the other side and what the CIT said was, you want the commission to look way back to the original material injury determination and change it. And that's really what your case is about. Two points. Number one, reconsideration does permit that same look back. And I would cite the Fair Silicon cases to show that the commission itself changed a changed circumstance review into a reconsideration and allowed for those circumstances to get to go forward. So that's point one. I think in terms of the true nature, there is certainly here a real concern with the original injury determination from 2016 after the 2020 decision that made clear that there was no dumping by the largest Turkish exporter that would pull the case into a completely different legal sphere. We would absolutely rely on that in the reconsideration case. But if the true nature of the action here is I want to change the original injury determination, then I think I understand why you're fighting that because then that's a 1581C claim that for whatever reason, you didn't... Well, I mean, you gave us some of the reasons remain. For you to prevail in this case, you need me to agree that the true nature of your action here is just, hey, they should have reconsidered and don't worry about what the reconsideration itself would entail. Is that right? I wouldn't put it quite like that, but I definitely agree with you that we need you to agree that the true nature of the reconsideration is that we had a basis to file that reconsideration letter and that the ITC was required to take a look at that reconsideration based on these material new facts. The fact that it would involve a look back into the 2016 determination doesn't make it an attempt to overturn the 2016 determination. The 2016 determination was going to remain legally valid for what it was at the time it was issued. The reconsideration decision would be taking the new facts of the intervening judicial decision into account. I would note that on this issue of whether or not we were even able to file a case under 1581C at the time of the 2016 decision, that the consolidated fibers case, a different one than I cited earlier, this is 574F2-1371 from the CIT in 2008. In that case, quite similar facts, a plaintiff in that case asked the CIT to refrain from ruling on a companion commerce case because the dumping margin in that case was going to be an all or nothing. If it won, similar to here, it would be outcome determinative. Notably, the commission in that case said that it shouldn't be allowed to do that because it was precluded from taking those kind of changes in the margin into account, citing SAA language that we looked at before because it wasn't a changed circumstance review, essentially. The court of international trade said that the then pending commerce appeal was far from final, it's a direct quote, and thus the court agrees with defendant that staying that action in lieu of the commerce appeal would be improper. If the court, and this is important, issued a remand in that separate commerce appeal and determined that there was a de minimis margin, the appropriate relief is for plaintiffs to seek a changed circumstances review once that amended margin becomes final. Frankly, that result makes sense under the legal framework that we have here because the companion dumping case for the unrelated Turkish producer involved three remands, went on for three and a half years. It was far from certain what the result of that would be. Arthur, on the other hand, plenty of cases that are cited to us where the court of international trade blessed exactly the opposite procedure where you would have filed protectively, you would say speculatively, maybe what the problem was standing, maybe you're worried you're going to lose a stay motion, but nonetheless, it's happened before where you would have filed a 1581C, immediately move for a stay, and if that was all denied, we're here. Presumably you'd come here and see if you can get us to put you in a situation that these other parties have benefited from in the past. Isn't that all available to you? I do acknowledge that there are cases where there have been stays that have been granted, but I would note in those circumstances, the facts are different and one primary and important issue is that in each of those cases, the same plaintiff had an issue at stake in all of the core cases that would affect the ones they're seeking a stay on. So the OCTG cases, it was the domestic industry that was filing several challenges at once, and they were leading a consistent litigation strategy that involved a challenge on the ITC's negligibility analysis in one of those cases. But where it's one plaintiff relying on another plaintiff's administrative record, dumping margins, data, rates, and claims, no, I haven't seen an example. Why isn't that route available? I'm honestly following up on Judge Stark's good question. Why isn't that route available to you? Even if, as he indicated, you end up having to go on appeal to find out and actually get that route made available to you, why couldn't you do it? I think at least two reasons. Number one, I think it's quite, it would be quite concerning to file a case when you do not have an actual challenge to, you know, lack of substantial evidence or otherwise in accordance with law. Because in Erdemir's case, making a challenge that was based on another party's potential challenge on a dumping margin, you know, I think would have been quite speculative and arguably had no basis. It wasn't by the time. It was not a mere potential challenge. The challenge had already been brought in this case. In the sense that the other Turkish producer did in fact file its case, yes. But Erdemir's case against the commission's injury determination would have had to have been based on another third party's dumping data challenge, claiming that there were errors in that dumping calculation, not Erdemir's own rate. So, if Erdemir, for example, Judge Cunningham, believed that it had errors in its dumping analysis that could result in a zero margin and that that would legally impact the ITC's decision, then I think it would make sense for all of these decisions to hang their hat on the fact that it needed to challenge that and preserve its rights. It didn't have its own claim that would support such a... I think just out of an abundance of caution, you might want to have filed a protective appeal. It sounds like you're basically deciding that you would, it wouldn't be right to do it. So, therefore, don't, aren't concerned about any sort of waiver of not preserving the rights, but you're just like, okay, I won't do it. Well, I think the court decisions that we've cited, including consolidated fibers, specifically point to the mechanism for addressing this scenario, and it is reconsideration or a changed circumstance review. So, you know, could we have filed a protective appeal and fought it out? And I think you're right, Judge Stark, had we been denied, as the second consolidated fibers decision did, deny that stay and said, you have another remedy and this isn't it, then I think the interlocutory appeal would have been an option. But to say that that was required and that is the hook for why reconsideration is improperly under 1581I isn't right. Well, you did have something at stake. You knew, if we just simplify the math, that 3 plus 2 is greater than, let's say, 3, but 0 plus 2 is under 3. And you knew that in the Chilokolo case was whether the 3 was going to be added. And so by not filing the protective appeal, knowing that all of that was the very question of whether you were subject to any anti-dumping margin was totally at stake in that other ongoing proceeding, you allowed the determination against you to become final and therefore not reviewable five or 10 years later. Why is that not the right outcome here? Well, I think for the reasons that I've mentioned before about whether or not Erdemeyer had a legitimate cause of action when it went in at the Court of International Trade to challenge the IPC, but I would also note that that shouldn't be, even if that stands, that shouldn't be the logic for saying there's no 1581I jurisdiction over reconsideration. The issues, I think, had been... We've been very clear, I think, if you had a 1581C, then by definition you did not have a 1581I. But I also think that it's quite clear that there is no 1581C jurisdiction over a reconsideration request. The reconsideration request is its own legal life in the same way that the CCR is. The CCR challenge is under 1581C because it's specifically delineated as a 1581C action. Reconsideration is not. But for you to win here, do you agree that we need to conclude the true nature of the actions to really focus on the reconsideration? Yes, Your Honor. I think it is. The true nature of this action is reconsideration, which is a cause of action that only occurred after the 2020 intervening litigation. And it's your burden, I think we've said, to show that 1581C would not be available or if available would be manifestly inadequate. That's correct. So if I'm really unsure, you lose. That's true. May it please the Court. Your Honors, I have a couple of points to make on the availability of the remedy that was available to Erdemeyer under lower court's 1581C jurisdiction. The first is that this court in Borlam and the lower court in a line, a long line of decisions dating back to at has recognized that in concurrent appeals of commerce and ITC determinations, the outcome of litigation impacting one agency can necessarily bear on the companion challenge. In Borlam, the commission had expressed concerns about potentially an endless revoir of cases. The determination at issue was a commerce anti-dumping recalculation. And there the court sort of disagreed and said, you know, at the end of the day, one has to balance issues with sort of accuracy versus expediency in that case. What is your response regarding home products? The opposing counsel used that case to support up her position. I want to know if you agree. We would say that it's an apposite, Your Honor, because this case is closer to the San Vicente Kamalu CIT decision, for instance, where the court found that. Talk about home products, which I think I just checked. Neither of the red briefs even discussed it. So you must have some very clear way of saying here's why home product is different. Can you say that? Well, Your Honor, what I would say is in this was not a pure sort of 1581I situation. Candidly, I'm blanking a little bit on home products. And if you could give me a couple of minutes just in rebuttal to address that, it would be much appreciated. Do you, does the ITC ever oppose a filing that is essentially a protective filing, conditional that says we are challenging the commission's material injury determination? Our only basis for that challenge is that it is wrong if the co-pending litigation against the commerce determination results in the elimination of one of the currently adjudicated dumpers. And do you ever say, oh, that's way too speculative, deny a stay? No, Your Honor. We're typically not in the business of doing that in these situations. In fact, if I could direct Your Honors to the ArcelorMittal LLC CIT proceedings, there the initial stay motion was denied by Judge Katzman. And the commission in its brief, once a reconsideration motion was filed, supported the reconsideration request, noting that it was consistent with the court's approach in other products, in other cases, including with respect to the Rancou. What was the basis for Judge Katzman's denial of the stay? Judge Katzman didn't, well, he didn't set a basis in his order. It was just a flat denial. Standards for a stay or not? Yes, Your Honor. And on reconsideration, he granted it. We supported that, just as we did not, well, just as we supported or did not oppose the stay request filed in connection with Boomerang 2. Is there a concern about, I don't know, proliferating truly protective suits being filed in the CIT, where they'll have to sit for potentially years with all of the remands and remand decisions and reconsider and all of that? Not particularly, Your Honor. In all of the cases that we cited as sort of examples of instances where similarly situated plaintiffs availed themselves of this mechanism. So Boomerang 2 LLC, ArcelorMittal, DuPont Asian Metals, and U.S. Steel v. U.S., in all those cases, if you look at the dockets, the time between the summons being filed and the stipulation of dismissal being filed, was in excess of three years. But these are administrable. In principle, we put our faith in a lower court to sort of balance those considerations. Would you say it's common to file a appeal in this sort of circumstance? Yes, Your Honor. Even with the concerns that the Posting Council raised about potential reliance on third parties, and I think she used the word speculative and all of that? Yes, Your Honor. So this falls within, for instance, in ENCON Industries, I think this is a very similar situation where the plaintiff in that case argued that its cause of action hadn't accrued until after the anti-dumping order at issue in that case was amended to exclude a party. And there, Judge Rustani noted that these aren't essentially uncommon. She said that in such instances, obtaining a stay may maximize a plaintiff's odds of success. But conditional appeals are fairly common in this context. And I would maybe draw a distinction between a conditional appeal of a commission decision that essentially rode on an outcome determinative commerce finding, like a de minimis determination leading to the termination of an order, and the facts that arose in, say, LG Electronics 1 and 2, for instance, where the issues were more attenuated. That is, the nexus between the outcome of the commerce proceedings, reductions in anti-dumping and countervailing duty margins, didn't necessarily lend itself to a finding that the commission would be convinced re-evaluating those margins in its impact analysis to terminate or revoke the order. And that's because in an impact analysis, the commission considers a multitude of factors at conservatively 15 or so. What is your best case, and it's fine if it's a trade court, that looks like this one in the sense that the putative plaintiff bringing a 1581C conditional protective appeal has no independent complaint about how it's being treated. Its whole complaint is just, you treated somebody else wrongly, and if that gets fixed, then we're going to benefit. That sort of fact scenario. Sure. So there isn't anything directly on point on this issue, Your Honor, but we would argue that the control of litigation decisions, even implicitly or otherwise, doesn't seem to feature as an important consideration in the CIP's case law. We would generally point to the cases discussed by Judge Rife, so Boomerang Cube, DuPont Asian, and its sort of progeny as analogous in those situations, and in addition to Encon Industries as well. Okay. I think we should hear from your close friend. Thank you, Your Honor. Again, may it please the court, and maybe I can pick up with Judge Stark's question on what is the closest case here, and I think it is Encon Industries, and that is a CIT case, but that was a situation where a company came in and tried to challenge the commission's determination based on the fact that another company had been excluded from the order. They had been revoked from the order, and the CIT said there you should have appealed the commission's original determination, and in cases like that, parties do seek stays pending the determination in the commerce case, and of course there are other cases like that. I don't think I processed the facts you were describing well enough. Was that a case in which some, that was, there was conditionality on another pending litigation? Yes, so the challenge to the commission determination would have been conditional on having a favor. Proceeding, having, involving commerce. Correct. That's exactly right, and that company tried to appeal it after the deadline, well after the deadline, and the court said you're, you know, we don't have a basis to hear this appeal because you're, you should have appealed and moved to stay the commission determination. So what do you do with the, at least the blue brief, it's one citation to home products, it's really just a quotation from Supreme Court's decision in Brotherhood of Locomotive Engineers, which pretty elaborately said there are a couple of different kinds of reconsideration things. In that case, it was the old ICC. One of them is just reconsider because you got it wrong, full stop, and the Supreme Court said traditionally that's not a reviewable decision. On the other hand, it was quite affirmative in saying if what you're saying is reconsider because of change circumstances, that is in fact very typically a reviewable decision, and indeed there's a line in local, in the Supreme Court decision that says it kind of has to be that way because otherwise there's a view of a question that's never been decided before, which is the answer to the underlying merits question on new facts. So why does that not point in the direction of saying the reconsideration here, which relies on a change circumstance, not in the world, I mean not in the trade world, but in the legal world, that why would not one consider that to be a separate kind of entity from the underlying decision, the underlying decision being 1581C, but reconsideration on change circumstances is really quite different, and therefore not under C, and therefore not blocked from being under 1581I. Well, I think this goes back, Judge Reiner, to the fundamental issue here, which is what is the true nature of the claim, and that, of course, so another way I can just put that label on what I just said. The Supreme Court decision at Locomotive Engineers makes clear that the true nature is, in fact, different from the proceeding that was available before. Well, here, though, what the true nature is, you have to look at the alleged source of harm. What is the alleged source of harm? It's in their complaint, and this is at page 708 of the appendix. They are challenging the failure of the commission to correct errors in the AD negligibility determination in the original investigation. That's what all reopening is on change circumstances do, but ultimately, though, that goes back to they are challenging the original determination that the commission made here. They are saying that this needs to correct errors in that original determination, so that goes back to the base determination that the commission made in the investigation, so maybe it's possible that the kind of change circumstances that's new and material evidence that the Supreme Court was talking about in Locomotive Engineers is not this kind, which is just a legal reevaluation of the very facts that were put in front of the commission before. It would be they are looking to have the commission reevaluate their original determination that they made on negligibility. That is ultimately what they are seeking here to have the commission do. They had the opportunity to do that through the conditional appeal process, so again, this goes back to did they have an avenue for appeal under 1581c? Could they have appealed under that provision? They clearly could have appealed and sought to other parties have done that. That's a statutorily prescribed path to challenge those determinations. Other parties have done it. We've talked about the cases OCTG, the ArcelorMittal cases, DuPont Asian Films, so other parties have done this, and that's how these things are typically done to challenge commission determinations that depend on an faulty commerce determination. The alternative for them is to say, well, it would be manifestly inadequate, but there they have to show that that would have been futile or incapable of producing any result. Clearly, these other cases show that that is not the case. They had the ability to challenge this under 1581c, and they simply failed to pursue that opportunity, and this is recognized in ARP materials that jurisdiction is not manifestly inadequate if someone just simply does not pursue it. Are you saying that reconsideration here based on changed circumstances is not reviewable, or are you saying because they had a 1581c, they didn't have a 1581i? We are saying both, actually. We are saying, first of all, that the Court of International Trade got it right. There was jurisdiction available under section 1581c. Therefore, that precludes an exercise of jurisdiction under 1581i. We are also saying, however, that an alternative basis for dismissal is they failed to state a claim upon which relief can be granted, and that's because there was no agency error originally here in the sense that what the commission did is it relied on the margin that had been most recently calculated by commerce. Counsel, do you have a response regarding home product? Yeah, home product is a very different case, and the situation there, it didn't involve a commission determination. It involved a commerce determination. What happened is in an administrative review that had been conducted, there was a challenge to that review up to the courts. During the pendency of that challenge to that administrative review, there was another administrative review ongoing at commerce in which fraud was detected, and what the plaintiff was trying to do in the case that was up on appeal is amend their complaint and try to get this fraud, because it also pertained to the review that was on challenge, they tried to get that before the court, and the court determined that they did not have the ability to consider that additional claim, so it was very different. There was pending litigation, there was so there was a very different situation than what we have before us today, and I will say the only time where the commission has conducted reconsideration provisions, it's where it's extraordinary circumstances that strike at the heart of the integrity of the administrative process, i.e. in the case of fraud. That's what home products involved as well, and to judge Toronto's question earlier, should we be worried about a flood of litigation if we're saying that they should do conditional appeal? A flood of not very active litigation. Right, correct, but that is not the case. This is only going to come up where you have this situation between the commission and commerce, where there's a determinative aspect of the commerce determination where it's going to require a companion commission appeal, and we've seen that in the right instances where that's occurred in OCTG and the ArcelorMittal case that we mentioned, and DuPont Asian Films, but you know, over the course of the history of these laws, we have not seen that kind of flood of, as you said, Judge Toronto, of inactive litigation. It's been exercised in the, you know, in inappropriate circumstances here. Your discussion with Judge Toronto about the true nature of this action, you said it's based on the alleged source of harm in the complaint. That makes sense to me, but have we said that? What case could I look to to say that in evaluating the true nature of the action, we look to the alleged source of the harm? That is in ARP Materials. ARP Materials? ARP Materials, is that right? It's cited in our brief. It's definitely cited in one of the... That's you. Thank you. And also Hutchinson, I think, is a case they relied on in that context as well, which is also your case as well. And just one final point, this notion that Erdemeyer did not have access to the materials they needed, and they had access to the entire administrative record, including all the materials relating to Cholokulu. They were in the consolidated appeal with Cholokulu that challenged the commerce determination, and they have never once denied that they knew exactly what the implications would be of Cholokulu's appeal here. Thank you. Just a brief point on the cases. I'd like to start with where I think the cases bucket out just kind of briefly. Grounding us on the reconsideration case, of course, which is what we're talking about here. We have Home Products and Borland, which are two Federal Home Products, is not specifically looking at the 1581C issue. But what it absolutely is doing is that in the subsequent determination where fraud was detected and a party sought to bring in that fraud into a different segment of one of the proceedings before the court, the court and the be considered because of similar principles that would otherwise apply here. And this court said that that is not true. This court said that there's no reason why a reopening or request for a remand based on this new and material evidence should have been precluded in the way that it was. And that's where the quote comes from, that it's well established that where a reopening of a case on the basis of new evidence is sought to address these changed circumstances, it is a reviewable determination. And that's still the threshold issue that the CIT rejected Erdemeyer's appeal on. I think this is consistent with the Borland case, which lays out also that there's a particular remedy, including through the change circumstance review. In Borland, there was a timely filed original appeal and through all of which. That is true. That is true. But I would also like to just address my friend on the other side's comments about whether or not the commission would oppose a stay in circumstances like this. And I would note that these are the LG cases where, again, very particularly because it matters, the LG plaintiffs were seeking to hold open an ITC determination on the basis of a commerce decision that was contingent on another party. What do you mean hold open an ITC? You mean have the ITC sit on it? Yeah, have the CIT stay a essentially protective appeal. And Judge Kelly in that case denied the stay and specifically said in denying the stay that the stay is speculative and that it is, a number of necessary steps that are uncertain at the time, including what is described as a difficulty in assuming that a de minimis margin would ultimately be achieved that would have any bearing on the ITC's final decision. Under the formulation that we have used regularly now in cabinet in 1581I jurisdiction, the standard is whether 1581C, as applied here, would be manifestly inadequate. So the fact that in some cases there really might be an undue amount of speculation to justify a stay doesn't mean that that mechanism is manifestly inadequate, particularly in a case, you know, this might not be the very, very strongest case for a stay, but it's a pretty strong case for a stay because, you know, what we just heard, there really was a simple legal argument you wanted to make about the negligibility 3% standard and there was one other party and that party had already sued to challenge its rate. So why wouldn't just the availability of that stay mechanism, even if a stay is not assured, be enough? Because it's the filing of the case that then is deemed improper. So the case would then get dismissed. That's an important piece of this. So it's not just whether or not there would have ultimately been relief under 1581C had Uttermeyer filed the case, secured a stay, and three and a half years later seen the results and been able to apply it. We can see that, you know, that path, if it had all been available, would have been available. The issue is if the stay isn't granted and the case is ultimately dismissed. So I think it's a key issue. I think the other important point is that it also requires this court to decide not only that Uttermeyer should have filed a challenge under the original investigation, but that because it didn't, reconsideration doesn't have its own separate life under 1581I. Do you agree that in evaluating the true nature of the action, what we consider the alleged source of harm? Yes, I do agree. But I would say that the alleged source of harm, while it ultimately gets you to the 2016 injury finding, the alleged source of harm is in 2020, once the decision has been made and become final, the court of international trade and Uttermeyer seeks reconsideration of that, it's harm that it experiences separate and distinct from the 2016 order. And then just briefly on ENCON, if I can, it's a very short decision that has very little analysis on this issue. So it's been being stretched quite far for a proposition, but one important factual distinction, ENCON in that case had challenged the ITC's decision and that case was over. What it was trying to do through a change in the commerce decision was reinvigorate its ITC case on these different grounds. And that's what the court said was not permitted. So I think that's an important distinction. Okay. I think we're going to declare this case submitted and thank the parties. And now we will start on the last of our three cases, number 242249, Ehrigley, et cetera, versus ITC. Welcome back. Good to see you again. This is an important piece of the whole puzzle because through a number of these somewhat circular discussions, we end up at, you got the relief that you needed in the sunset review. And so some of these really turn on the fact, did Erdemeyer actually get a full thumb review and did the commission properly then account for the facts of the no dumping decision in this review as it claims that it has? I think for starters, the core question is, is there room under the statute to account for this intervening 2020 decision that found no dumping? And on that point, I think the best articulation of it is judge Toronto's that looks at whether there's a likelihood or recurrence of material injury. And was the commission legally required under the statute to consider whether there had actually been dumping prior to it being to recur? So I guess I've been focused on in this case, I'm trying to understand something that certainly judge Katzman's decision, maybe the ITC as well. And that is that in the statutory provisions, the 1673 D provisions, there's this provision for negligibility. That does not appear in the 1675 B or C provisions. And I guess I'm trying to understand why that might be so. But in any event, in the original investigation, as I understand it, the commission does get to accumulate among different countries as it does in the 1675 now C, B as well. But the negligibility provision is country specific. Does everybody agree on that? Yes. OK. And it's also the numerator in the negligibility ratio is only the bad imports. And this was the dumped ones for 1673 D, the counterfeit similar and countervailing duties, the subsidized ones. Agreed. OK. And yet, when you get to the two provisions, change circumstances or subsidized review for the better in 1675, there's no provision for reassessing even under changed circumstances or even kind of on a forward looking basis. No provision for saying Turkey is just, you know, all of the bad imports. Now, the dumped imports are just too small a share of the total of imports of the same good. Instead, you have to do something else, which is figure out whether you can consider Turkey along with here five of the six other countries and whether Turkey's role in that makes no, what's the word, discernible adverse impact on domestic industry, which Judge Katzmann said is a less demanding standard than negligibility. Do I have at least the lay of the land right as a descriptive matter? Yes. OK. So why should that be so? Because it does feel like at bottom, the thing that's at stake is whether you can get or are entitled to get in the sunset review provision, a re-evaluation of negligibility. So a couple of comments. I think that we're not claiming as a direct statutory argument that we are entitled to a recalculation of negligibility in the sunset review in the way that you've laid it out. I think we get there in a different way. One of them is this accumulation point and looking at discernible impact where it should be taken into account strictly as negligibility itself. I think the first way we get there is 1675 A.A. 6, which says in either a CCR or a sunset review, the commission may look at the magnitude of dumping. And that is where we then trigger the magnitude of dumping definition under 1677 35 C. And we would say that the commission should take into account these material differences in the magnitude of dumping, aka the 2020 amended commerce decision, which says zero dumping for all of these imports and use that as its trigger to then find the magnitude of dumping is fundamentally different and affects whether revocation would continue or recur. It's the hook to why this isn't continuation or recurrence, because in 2020, there's a new decision that says there's no dumping at all. If that way of looking at it, I guess I'm, my, what I'm hearing is that at bottom, your only real argument is essentially the, I don't know, the challenge that the commission really didn't exclude the other Turkish company in its analysis, not what I thought was actually a separate legal argument, which would kind of go with my, you know, this point about the language about recurrence or continuation that you have to, that the commission had to reconsider in this context, in this proceeding, the negligibility standard, which is, you know, like arithmetic. Right. Right. And I'm sorry, I agree with you two separate issues, two separate issues. So the argument that I'm making is how is one hook to how we get into an assessment of the margin. I think looking for following the threat of revocation or continuation would revocation lead to the continuation or recurrence of dumping. The statute then lays out particular factors that are considered, which is how we then get into the may accumulate language and looking at the discernible impact. Is that responding to your question? So in that it, I think was laid out correctly by Judge Katzmann in terms of the structure. What I think ultimately is kind of an important overlay is that relief was totally foreclosed under either of these channels. And a kind of third point then is the fact that the commission still included these non-subject imports, which they later called background. And Judge Katzmann seemed to be okay with that, but in the volume section didn't make adjustments to discuss how the original injury determination was impacted by the 2020 decision. Can you show us where it is you think the commission was impacted by including the numbers? Yes. It's the first sentence of the accumulation decision. Page number. I can grab it. That'd be great. You said the first sentence? Yes. So 1816. It's in the actual Federal Register summary. Thank you. I think, right? That's right. Thank you. And that I think as a simple matter for remand is that, and it's central because it should be outcome determinative as well. It changes this core issue of the original volume impacts that are then required to be looked at from a pre-order perspective. And can you show me where on 1816 you're relying? Okay. And do you really mean the first page of the whole decision or just the turkey page? The first page of the accumulation discussion. So maybe it's not 1816. Maybe I had that wrong. Sorry. Your Honor, it's appendix 1877. Thank you. And is that right, Ms. Strickfield, you're relying on 1877? I believe it is. And so why would we not read that as simply a background discussion about the original investigations, especially because, as I'm sure you know, I think there's two footnotes, 276 and 298, where the Commission seems to expressly say, we recognize Joe Colu is no longer a part of it. Because it's an important context that I think drives the overall decision. I think looking at, and specifically as we asked for before the Commission, to look at a review and a recalculation of those initial volume impacts was the request that would sort of trigger an overall finding that there was an initial problem on the dumping calculation. If they, just for the sake of this question, if they didn't make that error, and they actually weren't considering Joe Colu when they were doing the Sunset Review, just for the sake of argument, I recognize you don't agree that happened. We heard reference in one of the earlier arguments to various ways that your chances of prevailing in the Sunset Review were actually more favorable than in the other mechanisms we've been talking about today. Do you agree or disagree with that? I disagree. I think that the Sunset Review statutory structure is a bit more difficult. I think that it is certainly possible for the Commission to give effect to the 2020 decision with respect to Joe Colu. But I think that it is a more limited form of relief for Erdemeyer through the Sunset Review anyway. And I do think that the ITC's analysis when it was looking at whether dumping was likely to recur, there was a tricky bit of a gap. The 2016 original injury decision is unchallenged. It is legally valid. And that is not what our claim was in the Sunset Review, that that should get reversed, nor could it get reversed in a Sunset Review proceeding. Our argument was rather that these facts should be taken into account when assessing whether or not there was a likelihood that there would be a recurrence of dumping because the intervening facts showed that there was no original dumping, and that should then be coming through the Sunset Review proceeding. I think Erdemeyer had maintained that first reconsideration, which did come first in 2020, and then the CCR was the most appropriate vehicle to literally, on its face, address circumstances that had changed, that undermined the original finding. But in the Sunset Review, notwithstanding that overlay, when we do look at accumulation factors, and we look at specifically the two factors in the statute about whether or not imports are likely to compete with each other in the domestic-like product, and whether they are not likely to have no discernible adverse impact on the domestic industry, those factors are not specifically delineated further in the statute when it comes to looking at accumulation for Sunset Review. In USINOR, the CIT case, the court notes that this is largely a negligibility test without a strict numerical calculation. And it's an important point because essentially what should have happened through the accumulation analysis at a minimum, if not through my previous argument about why we're looking at the magnitude of dumping to make an adjustment, then what should have happened through the accumulation analysis is that the commission should have looked at whether or not these imports are now negligible. They're claiming that they did, essentially, by looking at other factors that are on a go-forward basis and not at all reviewing anything to do with the original determination. But it is important to also review what the impact of that intervening court decision on the issue of negligibility through the lens of the CIT case in USINOR. Is it at least the case, as I think was represented by maybe the government, you don't have a burden of proof in the Sunset Review, but you do in the reconsideration in the CCR? That's right with respect to this issue. So in the CCR, the burden of proof is to demonstrate that there are sufficiently warranted change circumstances that justify those changes. In the Sunset Review, it's a different statute. It requires the Sunset Review. You didn't have to prove anything to trigger it, for sure, right? Exactly. And did you have to prove anything at all in the Sunset Review in order for it to turn out the way you would have preferred? Erdemeyer would have to put forward enough evidence that would show that the commission's decision in its favor would meet substantial evidence. I think in our brief, we went through a number of discussion points on where the commission's decision detracted, ignored evidence that detracted from its finding, which the commission acknowledges in its brief, but essentially says, you know, there was enough. There was enough there. I think that given how much weight was then put by the commission on the Sunset Review as being the fulsome review of Erdemeyer's reconsideration and change circumstances request, these gaps are particularly important. I would also note that Judge Katzmann's decision in a couple of places does seem to suggest that the CCR is perhaps the cleaner vehicle for some of these points to be addressed rather than the statute in the Sunset Review. And the CCR wasn't in front of him, and in fact, that decision came out after his decision, but I would just note that I think it's additional context. Who do we have? New counsel. New counsel. Mr. Tubia, is that it? Yes, your honor. Mr. Tubia? You got it. Thank you, your honors. May it please the court, Spencer Tubia representing the appellees of the U.S. International Trade Commission. Remember, we ask that this court affirm the commission's Sunset Review determination because that determination was supported by substantial evidence and otherwise in accordance with law. And I hope my answers will clarify some of the confusion that came up during the change circumstance proceeding portion of this, because as we noted before, this is the exact same statutory standards. And in fact, this leads me to my first point. I'll make four points about why the commission's determination was supported by substantial evidence. And first, Sunset Review determinations are purely prospective, and that was actually a direct quote from this court in Venezuelan cement. And as Judge Toronto asked earlier, it's not just prospective in relief, but it's prospective in how the statutes construed to assess what would likely occur in the future if the orders were revoked. And because they're prospective, because of the fundamental principle finale, the commission can't reach back and redetermine final original determinations under the statute, which is what negligibility, what? Can you provide any help and say, here's why it makes sense that at the investigation stage, there is this clean exclusion, you know, we're not interested in you any longer. That just doesn't appear in the, we're going to keep doing this. Thank you, Your Honor. Yes, I can. Actually, I can point explicit to the SAA at page 845, when it says that negligibility is only applied to final injury determinations. I can, I will also point to Judge Wallach's opinion in USINOR 3. I know- No, no, no. It just said, if all it says is what I just described, if not yet a, give me some sense of why that, what policies behind that. Yes. And Your Honor, I can point to Judge Wallach's actually opinion in USINOR 3, which is very- It's almost us. It's almost us. Yes. Was this CIT opinion or for us? This is a CIT opinion. And that opinion was actually very instructive though in this matter, because it points to the fact that negligibility is a strict quantitative analysis that looks back into the past based on data on the record. And as required under the statute, actually on 1674, 1677-24, based on the record of data at the time of the commission's final determination. And that determination became final after the commission made it. Now, I note Judge Wallach stated that negligibility is not a determination made during sunset review determinations because of the prospective looking nature of sunset review determinations. And that's because it's impossible to quantify what imports would actually be in the future if the orders were revoked under that prospective looking standard. And instead, the commission does, and as opposing counsel noted, and Ms. Streffel noted, use a discernible impact standard, which is distinctly different standards and negligibility because of the forward looking nature of it. And I note that even under that forward looking standard, Ms. Streffel noted that the commission didn't consider Cholokulu exclusion from the order as a matter of fact. It did, actually, the commission noted explicitly at footnote 276 on appendices 877 that Cholokulu is no longer a subject producer in this order. When it provided background information, as Judge Katzman noted, about imports during the original investigation. The commission later on went to note on footnote 284, appendix 278, that the commission excluded all data that it gathered during this investigation. Excluded Cholokulu from all that data and only included data from Eramir, and this is a very important point, Your Honor, a new producer on the record, Habas, which all but replaced Cholokulu's data on the record. Was it actually a new producer or just a new prominent producer? Your Honor, that's a very good question. So Habas was very briefly noted during the original investigation. But it was the end of the period investigation and the commission did not issue questionnaires to Habas, so it did not gather data from Habas during the original investigation. But that data was on the record of this case and, in fact, the commission was required to consider that data as a matter of law in its prospective forward-looking analysis that I noted. Again, explicitly cited by this court and it's explicitly noted in the statute. And to make their factual argument, and it's a very confusing factual argument, I think that's why there was a confusion here, is because essentially it's a legal argument disguised as a factual one, because they're asking the commission to redetermine a final determination made during the investigation, negligibility, using the commission's forward-looking sunset redetermination and the fundamental legal principle of finality noted by the Supreme Court in Vermont Yankee precludes the commission from looking back and redetermining that legal determination, which is based on a specific snapshot in time. And I note that another instructive case is from the CIT and was consolidated fibers, and we noted that earlier in an earlier context. But in that case, plaintiffs are trying to make almost the exact same condition precedent argument that appellants are trying to do here in saying that subsequent facts that came to light after the commission's original determination kind of called into question the commission's price and price determination, and therefore, under the... So counsel, just in light of the fact that we've had a wonderful day of arguments, any unique points that you'd like to sum up for this particular case to just kind of bring our wonderful day to a close? And I know, yes, I think a very important point in this matter, I think a very important point in this matter is even if the commission were to go back and say, oh, look, subject imports were negligible during the original investigation, and say they might have been negligible during the original, sorry, investigation. That can't give legal effect because of finality, but they might have been negligible in the original determination. That still doesn't win the day, because just because the commission found that imports were negligible in the CVD case does not mean that they weren't discernible in the immediate future if the order was revoked. And that's because of all the record evidence that we cited in our conclusory paragraph, that is appendices 1880 through 1881, all of which excluded Chola Kolu. So all of that data indicates that subject imports from Turkey would increase their discernible level if the orders were revoked. And if the commission did find a finding and say that subject imports may have been negligible during the investigation, if so facto, they would be negligible or discernible in the future. In this case, it would be ignoring all of that record evidence that excluded Chola Kolu. And as noted earlier, the commission did not utilize information gathered during the original investigation as a benchmark. It just stated that as background, as Judge Kaplan correctly noted. But it focused on and found most probative all the data that was cited at appendices 1879 through 1881, which was exclusive of Chola Kolu and show that the commission's findings were supported by substantial evidence and otherwise in accordance with law. Unless you have something that you think is new, I just assume at least invite your colleague to come up, but it's not an invitation that hasn't. May please the court. I do just want to make a few points. And I know you've taken a long time with us this morning. And one thing I want to address is this notion that the commission's sunset review report was somehow tainted by the fact that they discussed what happened in the original investigations. And I think it's important to point out, they are required by statute to at least take into account their findings in the original determination as to volume, price, effect, and impact. And that's what they did. They did that, and they made, they parsed the data in a way they tried to acknowledge where they could not take Chola Kolu out and where they could. And in fact, when they were considering the volumes, they cited to a particular table in the confidential staff report from the investigation that did carve Chola Kolu's imports out. And the only time when they in their actual analysis of discernible adverse impact that they mentioned the original investigation is to cite the trend in Erdemir's imports in the investigation. They then relied on the data before them in the sunset review, which excluded Chola Kolu's imports. And they found that Turkish producers would have the capability and the incentive to ship significant volumes to the United States if the orders were revoked. So I think it just was important to point that out. Negligibility, as we've discussed, is not something that they are to consider in a sunset review or change circumstances review. That the statute lays out what they are to consider. Negligibility is not a part of that. And that's very clear in the statute. We would ask you to affirm the CIT's decisions in all three of these cases. This notion that Erdemir did not have a legal remedy here, I think has been shown that that's not the case. They had a remedy to appeal the original determination. They simply failed to pursue it. They slept on their rights. They had a remedy through the sunset review. The commission fully considered their arguments there. They had a remedy here. And we would ask you to affirm the CIT. Thank you. I would like to direct your honors to our opening brief in the 2249 case at pages 22 to 24, where we do lay out the confidential record on where it's legally significant that volumes from Çelikoglu are continued to be, and continue to be, in the United States. And we do lay out referenced, including all the appendix references. This is the quote from the page that we were discussing. Exactly. Exactly. This is the full quote that Judge Starkey was discussing, that I referred to as the first sentence on the accumulation section for Turkey, along with the citation. Among the legal error, we would say it's not a mere recitation of what import volumes. What's missing is the assessment, the acknowledgement of the fact that those volumes have been rendered legally different by virtue of intervening litigation. That's the relief that should have come through there. And in additional sections where there's other factors, including where subject imports might remain a particular share. These are the factors that should have been taken into account. I would note that the claim that a sunset review is prospective in all ways is too broad. It does require a look back on pre-order conditions, and that language should mean something. Judge Katzmann noted that several times. Another word on administrative finality. While we certainly understand the point and do agree that it's an important tenant, again, I think it is important to acknowledge that there are separate legal avenues for a company to address circumstances that do change. And those were all invoked here. Three separate opportunities that were forward from the time of the decision to try to give legal effect to a very significant intervening decision. I think the facts here are a bit unusual and rare, and not a single precedent answers all of these questions at once, which is why these cases together are quite important. But I believe that the nuggets of the cases that we've identified make clear that a party like Erdemeyer should have rights to give effect to an intervening decision like this. Thank you. And thanks to all counsel. You've been very responsive and very helpful coordinating these things and helping us. Appreciate it. Thank you very much. And that completes our business.